# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs January 22, 2003

## JOSEPH SHEPHERD v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Monroe County**
**Nos. 97-127 and 97-128     William H. Inman, Judge**

---

**No. E2002-01455-CCA-R3-PC**
**September 17, 2003**

---

Prior to this appeal, the petitioner, Joseph Shepherd, was convicted of involuntary manslaughter in one proceeding, and, in a separate proceeding, he was convicted of felony murder and aggravated assault. He is currently serving a life sentence. The petitioner filed a petition for post-conviction relief in each case, raising several issues, including ineffective assistance of counsel. The post-conviction court denied relief in both cases and the petitioner appealed. Upon review of the record and the parties' briefs, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and JOSEPH M. TIPTON, J., joined.

Richard L. Burnett, Knoxville, Tennessee, for the appellant, Joseph Shepherd.

Paul G. Summers, Attorney General and Reporter; Angele M. Gregory, Assistant Attorney General; Jerry N. Estes, District Attorney General; and William Reedy, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I. Factual Background

In a previous opinion, this court briefly summarized the procedural history of the petitioner's cases:

> In April 1991, a jury convicted the petitioner of the felony murder of Roxanne Woodson and the aggravated assault of law enforcement officers investigating the case. The [petitioner] was sentenced to death for the felony murder and to two-to-five years for the

aggravated assault. On May 30, 1995, our supreme court reversed the death sentence and remanded the case for resentencing. State v. Shepherd, 902 S.W.2d 895 (Tenn. 1995). The petitioner was resentenced to life imprisonment for his felony murder conviction on April 29, 1997. In a separate trial, the petitioner was convicted of the second degree murder of Kathy Clowers and sentenced to ninety-nine years imprisonment. This court reversed the second degree murder conviction and remanded the case for a new trial. State v. Shepherd, 862 S.W.2d 557 (Tenn. Crim. App. 1992).

Joseph Shepherd v. State, Nos. E1999-01279-CCA-R3-PC and E1999-02266-CCA-R3-PC, 2000 WL 1742077, at *1 (Tenn. Crim. App. at Knoxville, Nov. 28, 2000).

Upon retrial of the Clowers case, the appellant was found guilty of involuntary manslaughter, and he received a sentence of two to five years incarceration. Subsequent to his conviction, the petitioner filed a motion for new trial. While this motion was pending, our supreme court remanded the Woodson case for resentencing. Thereafter, the petitioner entered into an agreement with the State in which he waived his right to appeal the Clowers case in exchange for a life sentence in the Woodson case.[1] In June 1997, the petitioner filed for post-conviction relief in both cases.

The petitions on both the Clowers and Woodson cases were effectively consolidated for the post-conviction court's review. See Shepherd, Nos. E1999-01279-CCA-R3-PC and E1999-02266-CCA-R3-PC, 2000 WL 1742077, at *1. In case 97-127, the petitioner raised complaints concerning the Clowers case, and in case 97-128, he raised complaints regarding the Woodson case. The post-conviction court initially dismissed both petitions as barred by the statute of limitations. Id. However, this court reversed the post-conviction court's ruling as to the petition involving the Woodson case, finding that the petition was timely filed. Id. at *4. This court further reversed the post-conviction court's dismissal of the petition involving the Clowers case and remanded for further proceedings. Id. at *5. Thereafter, the post-conviction court held a hearing on both petitions, first hearing proof regarding the Clowers case, then listening to proof regarding the Woodson case.

At the post-conviction hearing, the petitioner first contended that because there was no record of a ruling on his motion for new trial in the Clowers case, the trial court retained original jurisdiction over the case. The State argued that because the appellant waived his right to appeal in the Clowers case in exchange for a life sentence in the Woodson case, the appellant effectively withdrew his motion for new trial. Regarding the Clowers case, the appellant also complained that his counsel failed to perfect an appeal and that the trial court erred in allowing the testimony of Ann Barnett at trial.[2]

---

[1] At the post-conviction hearing, this document is often referred to as "the waiver."

[2] In his brief, the appellant explains that "Ms. Barnett testified . . . that the petitioner had on occasion provided her with certain drugs, and further testified as to the effects said drugs had upon her."

-2-

Based upon the proof adduced at the post-conviction hearing, the post-conviction court denied both petitions. Specifically, the court determined that the petitioner had not met his burden of establishing by clear and convincing evidence any of the claims alleged in his post-conviction petitions.

On appeal, the petitioner raises the following issues for our review: (1) whether the petitioner was denied the effective assistance of counsel when his attorney failed to file a notice of appeal and seek appellate review of the Clowers conviction; (2) whether the petitioner was denied his constitutional right to a fair trial when the trial court permitted the State to present the testimony of Ann Barnett at the Clowers trial; (3) whether the original trial court retained jurisdiction in this matter, as the petitioner's motions for new trial in the Clowers case were never ruled upon or otherwise disposed of by the trial court; (4) whether the petitioner's fundamental constitutional right to testify at the Woodson trial was violated when his attorneys failed to allow him to testify, as requested by the petitioner; and (5) whether the petitioner received the ineffective assistance of counsel when his attorneys failed to interview and/or present certain witnesses and defenses at trial.

## II. Analysis

To be successful in his claim for post-conviction relief, the petitioner must prove all factual allegations contained in his post-conviction petition by clear and convincing evidence. See Tenn. Code Ann. § 40-30-210(f) (1997). "'Clear and convincing evidence means evidence in which there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" State v. Holder, 15 S.W.3d 905, 911 (Tenn. Crim. App. 1999) (quoting Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 n.2 (Tenn. 1992)). Issues regarding the credibility of witnesses, the weight and value to be accorded their testimony, and the factual questions raised by the evidence adduced at trial are to be resolved by the post-conviction court as the trier of fact. See Henley v. State, 960 S.W.2d 572, 579 (Tenn. 1997). Therefore, we afford the post-conviction court's findings of fact the weight of a jury verdict, with such findings being conclusive on appeal absent a showing that the evidence in the record preponderates against those findings. Id. at 578.

Additionally, as the petitioner has claimed that he received the ineffective assistance of counsel in both cases, we note that a claim of ineffective assistance of counsel is a mixed question of law and fact. See State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). In Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001) (citations omitted), our supreme court explained the standard of review in cases of ineffective assistance of counsel:

> [A post-conviction] court's *findings of fact* underlying a claim of ineffective assistance of counsel are reviewed on appeal under a *de novo* standard, accompanied with a presumption that those findings are correct unless the preponderance of the evidence is otherwise. However, a [post-conviction] court's *conclusions of law*--such as whether counsel's performance was deficient or whether that deficiency was prejudicial--are reviewed under a purely *de novo*

standard, with no presumption of correctness given to the [post-conviction] court's conclusions.

"To establish ineffective assistance of counsel, the petitioner bears the burden of proving both that counsel's performance was deficient and that the deficiency prejudiced the defense." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984)). In evaluating whether the petitioner has met this burden, this court must determine whether counsel's performance was within the range of competence required of attorneys in criminal cases. See Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975).

### A. 97-127: The Clowers Case

The proof at the post-conviction hearing revealed that the petitioner was represented by attorney Charles Corn at trial. Corn testified that the petitioner executed a waiver of the right to appeal the Clowers case in exchange for the State agreeing to a sentence of life imprisonment, instead of seeking the death penalty, in the Woodson case. Corn acknowledged that the waiver did not specifically provide that the motion for new trial in the Clowers case would be withdrawn. In connection with this issue, the following colloquy took place:

> The Court: And at that time the motion for new trial in [the Clowers case] hadn't been ruled upon, but you just considered the waiver of appeal to take care of that.
>
> Corn: I must have thought that, Judge. I don't remember, but I must have thought that.

Corn further explained that the motion for new trial had been filed to preserve the petitioner's right to appeal even though the jury delivered the desired outcome in the case, namely an involuntary manslaughter conviction instead of a second degree murder conviction. Corn testified that he did not think the petitioner had a meritorious appeal. Accordingly, counsel believed that the State's proposal to not seek the death penalty in the Woodson case in exchange for the petitioner's waiver of the right to appeal in the Clowers case was an "excellent agreement."

Corn stated that there was no indication that the petitioner "did not know what he was doing" at the time of the waiver. Additionally, the petitioner did not appear to be under the influence of any drugs or intoxicants. Corn maintained that he would not have allowed the petitioner to execute the waiver if he had believed that the petitioner's mind was affected by drugs.

-4-

Corn further related that he was sure that the waiver of the petitioner's right to appeal the Clowers case was announced in open court.[3] Corn acknowledged that a letter he wrote to Judge Weatherford indicated that the petitioner wished to set aside his waiver of appeal. The letter, which was dated May 2, 1997, states that the petitioner telephoned Corn, asking to set aside his waiver because his thinking was distorted by changes in his blood pressure medication. Corn admitted that he did not file any motions to try to set aside the petitioner's waiver of the right to appeal the Clowers case. He explained that "once I do [a plea bargain] I don't go back on it."

Reed Dixon, the petitioner's co-counsel in the Woodson case, testified regarding the circumstances surrounding the petitioner's waiver of his right to appeal the Clowers case. Dixon recalled that the petitioner's waiver of his right to appeal the Clowers case took place in open court. Dixon clarified that he did not recall if the waiver was "executed" in open court.

Dixon stated that he had no reservations regarding the petitioner's ability to understand the waiver. Notably, Dixon averred that he was "extremely impressed with [the petitioner's] intelligence and his grasp of what was going on." Dixon also opined that had he known the petitioner wished to set aside the waiver of his right to appeal, he would have attempted to dissuade the petitioner from such action because of his concern that the petitioner would be sentenced to death in the Woodson case.

The petitioner testified at the post-conviction hearing and acknowledged that he waived his right to appeal in the Clowers case. However, after executing the waiver the petitioner contacted Corn, advising Corn that he wanted to set aside the waiver because he was on new blood pressure medication which affected his thinking at the time he signed the waiver. The petitioner claimed that he "wasn't thinking in a rational state of mind." The petitioner further claimed that he wanted to pursue a direct appeal of his sentence and conviction in the Clowers case.

After receiving a copy of Corn's letter to Judge Weatherford, the petitioner believed that his only available avenue for relief was a post-conviction proceeding. Accordingly, the petitioner stated that he filed for post-conviction relief in June 1997 after he read Corn's letter.

The petitioner's complaints regarding the Clowers case concern whether the petitioner's waiver of appeal was knowingly and voluntarily made. The post-conviction court determined that in the Clowers case, the petitioner

> alleges various grounds for relief, all of which he abandoned-offered
> no evidence thereon-except the issue of waiver of appeal. Petitioner
> concedes that he signed a waiver of his appeal, but that he was taking
> blood pressure medication at the time and was not thinking clearly.

---

[3] Judge Mashburn originally presided over the Clowers and Woodson cases. However, upon his demise, Judge Weatherford presided over the cases.

. . . The proof is clear that petitioner waived his right to appeal knowledgeably and intelligently.

As we earlier recounted, both Corn and Dixon testified that the petitioner was facing a possible death sentence in the Woodson case. In fact, the petitioner was originally sentenced to death in the Woodson case, but this court remanded the case for resentencing. As we noted, prior to resentencing the petitioner agreed to forfeit an appeal in the Clowers case in exchange for a life sentence in the Woodson case, thereby avoiding the death penalty. Furthermore, Corn testified that the petitioner did not have a meritorious claim for appeal in the Clowers case because the petitioner received the most favorable outcome possible, an involuntary manslaughter conviction.

Moreover, regarding the petitioner's waiver of his right to appeal, we note that a defendant must voluntarily waive this right. See Carter v. State, 102 S.W.3d 113, 119 (Tenn. Crim. App. 2002). "Further, the waiver should be reduced to writing in a document signed by the defendant, subscribed to by counsel, and clearly reflecting the defendant's awareness of the right to appeal and voluntarily waiving it." Id.; see also Tenn. R. Crim. P. 37(d) (providing that if a defendant waives the right to appeal, the waiver should be in writing and should also "clearly reflect that the defendant was aware of the right and voluntarily waived it").

At the post-conviction hearing, the petitioner presented no proof, aside from his own testimony, to indicate that his mental state at the time of the execution of the waiver was adversely affected by his medication. Contrarily, Corn and Dixon both asserted that there was no indication that the petitioner was under the influence at the time he executed the waiver. In the order denying the petition, the post-conviction court stated that "[t]he proof offered by the State respecting the waiver of appeal in the involuntary manslaughter case is fully credited." We conclude that the post-conviction court did not err in finding that the petitioner knowingly and voluntarily waived his right to appeal. See Tenn. R. Crim. P. 37(d); Carter, 102 S.W.3d at 119; Floyd Campbell v. State, No. M2001-00408-CCA-R3-PC, 2002 WL 970441, at *5 (Tenn. Crim. App. at Nashville, May 10, 2002), perm. to appeal denied, (Tenn. 2002).

We further conclude that such waiver effectively acted as an abandonment of the petitioner's motion for new trial. See State v. Holder, 634 S.W.2d 284, 285 (Tenn. Crim. App. 1982); Tracy Lynn Potter v. Denise Margaret Kriley Potter, No. 13, 1989 WL 3134, at *2 (Tenn. Ct. App. at Knoxville, Jan. 20, 1989). Additionally, we note that a valid waiver of the right to appeal serves as a waiver of many claims, such as the petitioner's complaint regarding Ann Barnett's testimony. See Tenn. Code Ann. § 40-30-206(g) (1997); see also Miller v. State, 54 S.W.3d 743, 747 (Tenn. 2001). Finally, in light of our determination that the petitioner's waiver of his right to appeal the Clowers case was valid, we conclude that the petitioner has failed to prove by clear and convincing evidence that Corn was ineffective in failing to seek appellate review of that conviction.

B. 97-128: The Woodson Case

Concerning the Woodson case, the petitioner raised the issues of whether he was denied the right to testify and whether he received the ineffective assistance of counsel. At the post-conviction hearing, Corn testified that he advised the petitioner not to testify in the Woodson case, but he never informed the petitioner that he could not testify. Corn opined that the petitioner was not a good witness and would damage his case. During a break in the Woodson trial proceedings, Corn again advised the petitioner against testifying and the petitioner agreed to not testify. The petitioner gave Corn a written account of his version of events which was placed in the petitioner's file at Corn's office. Corn asserted that Judge Mashburn never told the petitioner that he could not testify. In sum, Corn stated that the petitioner voluntarily waived his right to testify.

Regarding the petitioner's claim that counsel did not adequately investigate the case, Corn stated that he interviewed several witnesses that the petitioner asked him to interview. The petitioner informed Corn that these witnesses would be helpful to the petitioner's case. However, upon interviewing these witnesses, Corn deduced that the proposed witnesses had nothing but "speculation" to offer.

Dixon asserted that prior to the commencement of the Woodson case, Judge Mashburn ruled that the State would be able to cross-examine the petitioner regarding the Clowers conviction.[4] Therefore, defense counsel did not prepare the petitioner to testify because the defense had no intention of calling the petitioner to the stand. Regardless, during trial Judge Mashburn reversed his earlier ruling and ordered that the State would not be allowed to cross-examine the petitioner regarding the Clowers conviction.

Subsequent to Judge Mashburn's second ruling, the trial court allowed a one and one-half to two hour break in the proceedings to allow defense counsel to speak with the petitioner. Dixon stated that the petitioner wanted to testify, but he agreed not to after counsel advised against it. Dixon explained that originally the defense did not want the petitioner to testify because of the possibility that the jury would be told about the Clowers conviction. Additionally, Dixon stated that he did not want the petitioner to testify because the petitioner's version of events "did not make common logical sense" and "past events" of the petitioner could be brought in on cross-examination. Dixon maintained that the petitioner was not prohibited from testifying, but the petitioner acceded to the advice of counsel and agreed not to testify.

Billy Ray Shepherd, the petitioner's brother, testified at the post-conviction hearing that he was never interviewed by defense counsel. Shepherd asserted that two weeks before Woodson's body was discovered on his parents' property, Shepherd had been on the property and did not notice a grave. The petitioner was incarcerated in North Carolina at this time. Shepherd made no specific effort to make the police aware of this fact. In explanation for his laxity, Shepherd asserted, "I was busy at the time myself, sir."

---

[4] As we have noted, at the time of the Woodson trial the petitioner had been convicted of second degree murder in the Clowers case and the direct appeal in that case was pending.

The petitioner testified that he thought he would be allowed to testify at the Woodson trial until the defense rested its case. He asserted that he never waived his right to testify; instead, the petitioner claimed that counsel and Judge Mashburn would not allow him to testify. The petitioner conceded that he never heard Judge Mashburn forbid him from testifying, but "[t]hat's the way I took it." Additionally, the petitioner maintained that he asked counsel to interview several witnesses. The petitioner asserted that these witnesses were present at trial, but defense counsel would not permit them to testify.

It is unquestionable that a criminal defendant has a fundamental, constitutional right to testify at trial. See Momon v. State, 18 S.W.3d 152, 161 (Tenn. 1999). This fundamental right may only be waived by the defendant himself. Id. "Generally, a right that is fundamental and personal to the defendant may only be waived if there is evidence in the record demonstrating 'an intentional relinquishment or abandonment of a known right or privilege.'" Id. at 161-62. A waiver of this right may not be presumed by a silent record. Id. at 162.

Momon outlined procedural safeguards to be employed to ensure that a defendant's knowing, voluntary, and intelligent waiver would be reflected on the record. Id. However, because Momon served only to clarify the existing law, "the mere failure to follow these guidelines will not in and of itself support a claim for deprivation of the constitutional right to testify if there is evidence in the record to establish that the right was otherwise personally waived by the defendant." Id. at 163.

It is undisputed that the trial in the Woodson case occurred prior to Momon. Therefore, the failure to have the petitioner waive his right to testify on the record is not determinative of the issue. The post-conviction court accredited Corn's testimony concerning the petitioner's waiver of the right to testify after being thoroughly apprised of the dangers of testifying. See Kong C. Bounnam v. State, No. W2001-02603-CCA-R3-PC, 2002 WL 31852865, at *10 (Tenn. Crim. App. at Jackson, Dec. 20, 2002), perm. to appeal denied, (Tenn. 2003). The evidence does not preponderate against this finding.

The petitioner also complains that counsel were ineffective in failing to "interview and/or present certain witnesses and defenses at trial." The petitioner makes no further mention of which "defenses" counsel failed to pursue. Thus, we are precluded from addressing this claim. See Black v. State, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990). Additionally, the only uncalled witness the petitioner specifically alleged counsel should have called was his brother, Billy Ray Shepherd.

Shepherd testified at the post-conviction hearing that he was not interviewed by counsel prior to trial. Shepherd stated that two weeks prior to the discovery of Woodson's body there was no grave at the location where the body was found. He also stated that during this time the petitioner was incarcerated in North Carolina. Shepherd explained that he did not contact counsel or the authorities to relate this information because he was "busy." Dixon testified that Corn was responsible for interviewing witnesses prior to trial. Corn testified that he had several meetings with the petitioner's family and encouraged them to ask family members to come forward if they had any

-8-

information regarding the case. The post-conviction court specifically noted that the testimony of Shepherd "is not credited."

Accordingly, we conclude that the petitioner has failed to meet his burden of establishing by clear and convincing evidence that counsel was deficient in failing to interview Shepherd and that such deficiency prejudiced the petitioner. See Ralph E. Thompson, Jr. v. State, No. E2001-00003-CCA-R3-PC, 2002 WL 392820, at *10 (Tenn. Crim. App. at Knoxville, Mar. 14, 2002), perm. to appeal denied, (Tenn. 2002). This issue is without merit.

### III. Conclusion

Based upon the foregoing, we affirm the judgment of the post-conviction court.

_____
NORMA McGEE OGLE, JUDGE